UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIGUEL ARELLANO,

    Plaintiff,

v.                                                        Case No. 1:14-cv-526
                                                                  Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                             /

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on December 8, 1968 (AR 213).[1] He completed the 11th grade and had previous employment as a tree trimmer and crew foreman for tree removal (AR 28, 220). Plaintiff identified his disabling conditions as "back problems" and "mental problems" (AR 219). This is not plaintiff's first attempt to obtain disability benefits. The administrative law judge (ALJ) summarized plaintiff's previous application for benefits as follows:

> Claimant previously filed applications for a period of disability, disability insurance benefits and supplemental security income in August 2007. Those applications were ultimately denied in a decision by an administrative law judge dated February 12, 2010. This decision was affirmed by the Appeals Council. No further appeal was filed. Therefore, the February 2010 decision has become final and binding.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

(AR 16). This appeal involves plaintiff's claims filed on August 24, 2010, in which he alleged a disability onset date of November 3, 2005 (AR 16). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 17, 2012 (AR 16-30). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity "since February 13, 2010, date of the prior final and binding decision" and that he met the insured status requirements of the Act through December 31, 2010 (AR 19). At the second step, the ALJ found that plaintiff had the following severe impairments: antisocial personality disorder; mood disorder; anxiety disorder; substance abuse disorder; psychotic disorder; cognitive disorder and asthma (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 25).

The ALJ decided at the fourth step that:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following limitations: lifting 20 pounds occasionally and 10 pounds frequently; standing and walking 6 hours and sitting 6 hours in an eight hour workday; and he is limited to simple, routine and repetitive tasks, with only occasional contact with the public, coworkers and supervisors; and no fast pace jobs or production quotas.

(AR 22-23). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 28).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 29). Specifically, plaintiff could perform the following work in the State of Michigan: assembler (6,000 positions); inspector (7,000 positions); and bench assembler (8,000 positions) (AR 29). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from February 13, 2010 through August 17, 2012 (the date of the decision) (AR 29-30).[2]

### III. ANALYSIS

Plaintiff raised one generic issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating sources, violated agency rules, and misapplied the law.**

Plaintiff contends that the ALJ failed to give appropriate weight to the opinion of his treating psychiatrist, David Lyon, D.O.[3] A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than

---

[2] The Court notes that the ALJ's decision includes a typographical error, stating that plaintiff "has not been under a disability, as defined in the Social Security Act, from February 13, 2012 [sic], through the date of this decision" (AR 29). As discussed, the ALJ considered plaintiff's condition from February 13, 2010, the day after the ALJ's previous decision denying benefits (AR 16, 19). In addition, the Appeals Council's decision noted that the ALJ's decision found that plaintiff "was not disabled from February 13, 2010, through the date of the hearing decision on August 17, 2012" (AR 4).

[3] While plaintiff devotes a few sentences claiming that the ALJ failed to give appropriate weight to IQ testing performed on August 18, 2010, he did not develop this argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

In his February 1, 2011 opinion, Dr. Lyon stated that plaintiff had "no useful ability to function" in the following areas: complete a normal workday and workweek without interruptions

from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; and deal with normal work stress (AR 376). The doctor also opined that plaintiff was "unable to meet competitive standards" in the following areas: remember work-lie procedures; maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; deal with stress of semiskilled and skilled work; interact appropriately with the general public; and maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness (AR 376-77). On April 16, 2012, Dr Lyon indicated in a letter that his February 1, 2011 opinion "accurately reflects" plaintiff's "current capabilities and limitations" (AR 837).

The ALJ gave limited weight to the Dr. Lyon's opinions because they were not consistent with the record as a whole, inconsistent with the doctor's own records (which suggested that plaintiff may be fabricating symptoms), and based significantly on plaintiff's subjective allegations (AR 27-28). Given the length of the ALJ's discussion, the Court will reproduce it below:

> The opinions of Dr. Lyon are given limited weight (20 CFR 404.1527 and 416.927). Dr. Lyon's opinions are not consistent with the record as a whole or his own treating notes. For example, his opinions are inconsistent with claimant's treating primary care physician, Beverly Sankey, M.D., who noted claimant was pleasant, cooperative, and had good eye contact, and normal memory and speech (Exhibit Bl0F at 11). Furthermore, his opinions are inconsistent with Dr. Sankey's numerous notations that claimant was stable (Exhibits B10F at 9,6 and 2).

7

> Moreover, Dr. Lyon's opinions are inconsistent with his own records that repeatedly document that claimant has few positive clinical findings. For example, Dr. Lyon's exams generally noted no more than an occasional depressed mood, or blunted and constricted affect (Exhibits B12F, B13F, B14F, B19F, B22F and B21F). Dr. Lyon never noted that he observed claimant responding to internal stimuli, and he repeatedly documented that claimant did not appear psychotic (Exhibits B12F, B13F, B14F, B19F, B22F and B21F). Further, he frequently documented that claimant was doing well, was pleasant, had normal thoughts and speech, and was able to smile and joke (Exhibits B12F, B13F, B14F, B19F, B22F and B21F).
>
> Thus, Dr. Lyon's opinion appears to rest significantly on claimant's subjective allegations; however, this is inconsistent with Dr. Lyon's apparent misgivings regarding claimant's symptoms. For example, he refers to claimant as dramatic and indicates his allegations of mild paranoia are likely the result of secondary gain issues (Exhibits B12F at 119-120, and 105). Furthermore, his reliance on claimant's subjective allegations is inconsistent with the other notations in the record that document bizarre and "attention seeking" movements, atypical and inconsistent symptoms, exaggerating or fabricating symptoms, and issues of "secondary gain towards obtaining disability" (Exhibits B4F at 9-10, 4-5). Additionally, Dr. Lyon's opinions are inconsistent with the notation from claimant's hospitalization that noted, "in this writer's discussion with his outpatient treating psychiatrist, the concern was reported by both the last inpatient treatment staff, as well as Dr. Lyon, that the patient may be fabricating symptoms for reasons of secondary gain, with the purpose being his hope to gain disability benefits" (Exhibit B6F at 8). Moreover, Dr. Lyons [sic] opinions are inconsistent with claimant's report at the hearing that he was only unable to perform his past work due to his alleged physical problems. Claimant did not mention psychiatric difficulties as a barrier to the performance of his past work.

(AR 27-28).

Plaintiff contends that in giving only limited weight to Dr. Lyon's opinion, the ALJ relied on isolated negative notations in the medical record rather than his overall record, including his nine-day hospitalization which began on August 10, 2010. By way of background, Dr. Lyon did not recommend that plaintiff be admitted to the hospital. The ALJ noted that upon examination by Dr. Lyon that morning, plaintiff had normal hygiene, normal speech, organized thoughts, no psychomotor retardation, no hallucinations, no delusions and did not appear psychotic (AR 25, 598-

99). Nevertheless, plaintiff requested hospitalization (AR 25, 598-99). The doctor offered plaintiff medication, but plaintiff declined and insisted on hospitalization (AR 25, 599).[4]

Plaintiff presented differently when he was admitted at the hospital. Admission records indicate: that plaintiff was disheveled, unkept and unshaven; that he had pressured speech; that he had "piercing eye contact with times of no eye contact"; that he was irritated, depressed and anxious; that he had a flat affect and a "poverty of content" in his thought processes; that he had poor memory, attention span, concentration, fund of knowledge and judgment; that he admitted to hallucinations, delusions and disorganized thoughts; and that he presented as a danger to himself and others (AR 319). However, it was also noted that plaintiff was oriented to time, place and circumstance, and that he presented with "attention-seeking movements" which, according to the hospital staff "[d]id not present like any side effects movements that we have seen" (AR 319). Plaintiff's diagnoses included: schizaoffective disorder; antisocial personality disorder; living with chronic symptoms (chronic back pain); nicotine dependence; alcohol abuse (plaintiff reported "none in 1 year"); caffeine-induced anxiety disorder; cannabis abuse (plaintiff reported "none in 2 or 3 years"); cocaine abuse (plaintiff reported "none in 15 years"); stimulant abuse of methamphetamine (plaintiff reported "last use . . . 1 year ago); and PCP (plaintiff reported "last use 25 years ago") (AR 320).

In reviewing plaintiff's medical history, the ALJ addressed both plaintiff's nine-day hospitalization from August 10-19, 2010 as well as a subsequent two-day hospitalization on August 22-24, 2010 (AR 25-26). The ALJ noted that at the time of plaintiff's discharge from his first

---

[4] As discussed below, plaintiff improved "significantly" after he received "minor medication adjustments" at the hospital (AR 314).

hospitalization at Pine Rest Hospital, William J. Sanders, D.O. stated "[i]t is known that the plaintiff does have a diagnosis of antisocial personality disorder, has not been working and is having financial stressors, and *there may have been some secondary gain towards obtaining the disability as he was currently in the process of getting that*" (AR 313) (emphasis added). The doctor went on to state, "[r]egardless, he did have some signs and symptoms of mood instability and some cognitive decline, which is likely very real and significant, and he will likely need some ongoing treatment in the future" (AR 313-14). This being said, Dr. Williams further noted that plaintiff "*did improve significantly with some minor medication adjustments*, and he was therefore discharged in much improved condition to follow with Dr. David Lyon" (AR 314) (emphasis added).

Two days later, upon plaintiff was admitted to the Carson Behavioral Health Center. At that time, the admitting clinician Gary K. Ralph, D.O. noted in pertinent part that "[i]n this writer's discussion with [plaintiff's] outpatient treating psychiatrist, the concern was reported by both the last inpatient treatment staff as well as Dr. Lyon, *that [plaintiff] may be fabricating symptoms for reasons of secondary gain, with the purpose being his hope to gain disability benefits*" (AR 339) (emphasis added). The ALJ found it significant that physicians, including Dr. Lyon, suspected that plaintiff was fabricating or exaggerating symptoms for reasons of secondary gain (AR 27-28).

In addition, the ALJ found that plaintiff's testimony regarding his alleged disabling condition "was not credible":

> Although claimant alleged he heard voices and saw shadows, almost all of his treating records indicate that he did not look psychotic and he would either deny any hallucinations and delusions, or report what his clinicians would describe as "vague" reports (Exhibits B12F, B13F, B14F, B19F, B22F and B21F). Moreover, during his two hospitalizations in August 2010 his clinicians did not feel that all of his symptoms were genuine. For example, during his admission process he flapped his

arms strangely and the clinician noted the movement was bizarre, and "attention seeking" (Exhibit B4F at 9-10). Further, although he alleged worsening psychotic symptoms, his symptoms were described as "atypical" and not consistent (Exhibit B4F at 4-5). There was concern he was exaggerating and "there may have been some secondary gain towards obtaining disability" (Exhibit B4F at 4-5). Furthermore, at his second August 2010 hospitalization, it was noted that he was not responding to internal stimuli (Exhibit B6F at 4-5). Additionally, the clinician indicated, "in this writer"s discussion with his outpatient treating psychiatrist, the concern was reported by both the last inpatient treatment staff, as well as Dr. Lyon, that the patient may be fabricating symptoms for reasons of secondary gain, with the purpose being his hope to gain disability benefits" (Exhibit B6F at 8).

Additionally, claimant testified he could not work because his body could not take it; however, he has extremely limited clinical and radiological findings related to his physical impairments, and he has required very little treatment for his alleged physical conditions (Exhibit Bl0F). Moreover, there is no evidence of any knee problems in the record, or any evidence that would substantiate his alleged leg and foot numbness. Further, although he alleged difficulty with personal care in his Function Reports, his treating records consistently noted good grooming and hygiene (Exhibits B12F, B13F, B14F, B19F, B22F and B21F). In addition, although he alleged he could not drive because of his psychiatric conditions and medications, the records document that he reported he was only unable to drive due to his past DUI (Exhibit B12F).

(AR 23-24). Plaintiff does not dispute this credibility determination, which lends support to the doctors' suspicions that he was fabricating or exaggerating symptoms.

The issue before the Court is not whether it would reach the same conclusion as the ALJ, but whether the decision of the ALJ is supported by evidence. Based on this record, the ALJ's assignment of limited weight to Dr. Lyon's opinions is supported by substantial evidence as set forth in the decision. *See Cutlip*, 25 F.3d at 286. Accordingly, plaintiff's claim of error will be denied.

## IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: July 27, 2015                             /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge